UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:18-cr-00005-SEB-VTW ) |
| JAMES D. LINVILLE, | ) -01 ) |
| Defendant. | ) |

**Entry Denying Defendant's Motion for Release from Custody**

Defendant James Linville, represented by retained counsel, has moved for compassionate release, requesting a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) based on "extraordinary and compelling reasons." Dkt. 190. For the reasons stated below, the motion is **denied**.

## I.  Background

On February 28, 2018, Mr. Linville was indicted on several charges related to wire fraud and mail fraud. Dkt. 1. The indictment alleged that Mr. Linville was involved in a conspiracy that solicited donations from individuals and organizations to purportedly support military personnel, veterans, and their families. *Id.*; *see also* dkt. 116 at ¶¶ 11-35. Mr. Linville then used the donations for his own personal benefit. *Id.*

In December 2018, Mr. Linville entered a petition to enter plea of guilty and plea agreement. Dkt. 100. He agreed to plead guilty to Count One, conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349, and Count Two, conspiracy to commit mail fraud in violation of 18 U.S.C. §§ 1341 and 1349. *Id.* at ¶ 1. In exchange, the United States agreed to

dismiss the remaining thirty-two counts against him and recommend a sentence within the applicable Sentencing Guidelines range. *Id.* at ¶¶ 2, 10.

In the plea agreement, Mr. Linville acknowledged that he and others obtained at least $125,000 in cash or check donations, and he agreed to pay restitution to the victims of the offenses. *Id.* at ¶¶ 16, 18. He also agreed to various Sentencing Guidelines computations that resulted in a total offense level of 22. *Id.* at ¶ 22. Finally, Mr. Linville's plea agreement contained a waiver wherein he agreed not to contest, or seek to modify, his sentence "in any later legal proceeding, including but not limited to, an action brought under 18 U.S.C. § 3582 . . . ."[1] *Id.* at ¶ 24.

A presentence investigation report ("PSR") was prepared prior to Mr. Linville's change of plea and sentencing hearing. Dkt. 116. The PSR summarized the offense conduct and noted that the United States had "identified over 600 victims who suffered a cumulative loss of $130,804.23." *Id.* at ¶ 35. It also outlined multiple threatening voicemail messages left by Mr. Linville for a detective with the Clark County Sheriff's Department in July 2017. *Id.* at ¶ 30. In these messages, Mr. Linville threatened to file a personal injury lawsuit against the detective, stated he would "make a mockery" of the court and "destroy the Sheriff's Department," and said he would "own" the detective. *Id.*

The PSR noted that Mr. Linville suffers from hypertension, a blood clot in his spleen, pancreas issues, hepatitis C, diabetes, and enlarged veins in his stomach. *Id.* at ¶ 84. He also struggles with depression, anxiety, and substance abuse. *Id.* at ¶¶ 96, 101. Mr. Linville reported that he stopped using controlled substances in late 2017. *Id.* at ¶ 101.

---

[1] This waiver excludes any motion based on an amendment to the Sentencing Guidelines that lowers the applicable guideline range and is explicitly made retroactive. *Id.*

The statutory maximum term of imprisonment for Mr. Linville for both Count One and Count Two was 20 years. *Id.* at ¶¶ 115, 116. Based on a total offense level of 22 and a criminal history category of II, his sentencing guideline range was 46 to 57 months' imprisonment. *Id.* at ¶ 117. The sentencing guideline range for a term of supervised release was 1 to 3 years per count. *Id.* at ¶ 120.

On May 29, 2019, the Court accepted Mr. Linville's guilty plea and sentenced him to an above-guidelines sentence of 60 months' imprisonment. Dkt. 148; dkt. 159. It also imposed a two-year term of supervised release and restitution in the amount of $130,804.23. Dkt. 159. At the time of his sentencing, Mr. Linville was 46 years old. *See* dkt. 116. at p. 3.

Mr. Linville is currently 47 years old. He is housed at the Federal Correctional Institution Elkton ("FCI Elkton") in Lisbon, Ohio. Dkt. 195-1. His full-term release date is March 9, 2023, but his statutory projected release date is June 12, 2022. *Id.* As of May 2020, the Bureau of Prisons ("BOP") calculated that Mr. Linville had served approximately 44.4% of his full-term sentence.[2] *Id.*

Mr. Linville submitted an administrative request for compassionate release, and the warden denied this request on May 4, 2020. Dkt. 195-2. The denial states that health services staff reviewed Mr. Linville's medical records "and determined [he did] not meet the criteria for a compassionate release/reduction in sentence at this time." *Id.*

---

[2] Mr. Linville is currently enrolled in a Residential Drug Abuse Program. If he successfully completes this program, he is eligible for a sentence reduction of not more than 1 year. Although Mr. Linville is in good standing with the program, it is currently suspended. Because Mr. Linville has not completed the program and it is unknown when he may do so, any projected release date based on successful completion of this program is uncertain.

## II.    Discussion

Mr. Linville argues that the Court should order his immediate release because his preexisting medical conditions combine with the threat of the COVID-19 pandemic to create an extraordinary and compelling reason for release. In response, the United States asserts that (1) Mr. Linville waived his right to file this motion; (2) he has not satisfied his burden of showing an extraordinary and compelling reason for his release; and (3) consideration of the factors set forth in 18 U.S.C. § 3553(a) weighs against release.

Mr. Linville seeks relief under § 603(b) of the First Step Act, which is codified at 18 U.S.C. § 3582(c)(1)(A)(i). *See* 132 Stat. at 5239. That section provides:

> The court may not modify a term of imprisonment once it has been imposed except that . . . in any case . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.[3]

18 U.S.C. § 3582(c)(1)(A)(i). Mr. Linville may have waived his right to file a motion for compassionate release in his plea agreement because it arises under § 3582. *See* dkt. 100 at ¶ 24. The Court need not resolve the question of waiver, however, because even assuming that waiver does not apply, Mr. Linville's motion should be denied.

---

[3]Until December 21, 2018, only the BOP could bring a motion for sentence reduction under § 3582(c)(1)(A). The First Step Act of 2018, which became effective on December 21, 2018, amended § 3582(c)(1)(A) to allow defendants to bring such motions directly, after exhausting administrative remedies. *See* 132 Stat. at 5239 (First Step Act § 603(b)).

Mr. Linville states that he submitted a request for early release to the warden of FCI Elkton but did not receive a reply. Dkt. 190 at 4. The United States included the warden's denial of Mr. Linville's request, dated May 4, 2020, with its response. Dkt. 195-2. Thus, it is undisputed that Mr. Linville has exhausted his administrative remedies, and the merits of his motion for compassionate release are ripe for the Court's consideration.

Congress directed the United States Sentencing Commission ("Commission") to further define "extraordinary and compelling reasons." 28 U.S.C. § 994(t) ("[T]he Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). The relevant policy statement appears at United States Sentencing Guidelines Manual §1B1.13. As relevant here, the policy statement provides that a court may reduce a sentence if,

> after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that . . . [(1)] extraordinary and compelling reasons warrant the reduction . . . ; (2) [t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) [t]he reduction is consistent with this policy statement.

U.S.S.G. Manual § 1B1.13.

The application notes to the policy statement identify four possible "extraordinary and compelling reasons" justifying a sentence reduction. *Id.*, Application Note 1. Mr. Linville relies on the fourth, which provides that "extraordinary and compelling reasons exist" if: "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with,

the [other reasons described in Application Note 1]," *id.*, Application Note 1(D). This provision is sometimes referred to as the "catchall" provision.[4]

In his motion, Mr. Linville asserts that extraordinary and compelling reasons exist for his release due to his "significant medical issues including hypertension, a blood clot in his spleen, issues in his pancreas, hepatitis C, diabetes, and enlarged veins in his stomach." Dkt. 190 at 8. Mr. Linville did not submit any medical records or other documentation concerning these conditions. In response, the United States argues that the Centers for Disease Control has not identified many of Mr. Linville's health conditions as putting people at an increased risk of severe COVID-19 symptoms and, to the extent Mr. Linville has medical conditions that are high risk factors, he has not demonstrated the severity of these medical conditions. Dkt. 195 at 9-15. Mr. Linville's failure to present evidence concerning his medical conditions is troubling, and his argument on this issue

---

[4]The policy statement provides that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons." U.S.S.G. Manual §1B1.13, Application Note 4. Likewise, the catchall provision provides, "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*, Application Note 1(D). This policy statement has not been amended since the passage of the First Step Act. Insofar as it states that only the Director of the BOP can bring a motion under § 3582(c)(1)(A), it is directly contradicted by the amended statutory text. This discrepancy has led some courts to conclude that the Commission does not have a policy position applicable to motions under § 3582(c)(1)(A)(i) and that they have discretion to determine what constitutes an "extraordinary and compelling reason" on a case-by-case basis, looking to the policy statement as helpful, but not dispositive. *See, e.g.*, *United States v. Perdigao*, No. 07-103, 2020 WL 1672322, at *2 (Apr. 2, 2020) (collecting cases); *see also United States v. Haynes*, No. 93 CF 1043 (RJD), 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020) (collecting cases). Other courts have held that they must follow the policy statement as it stands and, thus, that the Director of the BOP is the ultimate arbiter of what counts as "extraordinary and compelling" under the catchall provision. *See, e.g.*, *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019). The Court need not resolve that debate, though, because Mr. Linville's motion is due to be denied even if the Court assumes that the policy statement is not binding and that is has the discretion to determine what constitutes an "extraordinary and compelling reason" for a sentence reduction.

is underdeveloped.[5] This is not, however, the only grounds Mr. Linville presents for finding a compelling and extraordinary reason for release.

Mr. Linville also contends that the outbreak of COVID-19 at FCI Elkton puts him at "significant risk." Dkt. 190 at 8. This argument has some merit. Despite the implementation of protocols to control spread of the virus, at the height of the outbreak at FCI Elkton, inmates faced a significant risk of catching a serious, potentially deadly disease. However, to date, the Court has not found that incarceration in a COVID-19 "hotspot" is enough, standing on its own, to constitute an extraordinary and compelling reason warranting immediate release from imprisonment.[6] Rather, the Court looks at the totality of the circumstances, and it has denied motions for compassionate release from defendants who are not at serious risk from experiencing severe COVID-19 symptoms, even when they are incarcerated in a hotspot. *See, e.g.*, *United States v. Douglas*, No. 3:14-cr-00003-RLY-CMM-03, dkt. 407 (S.D. Ind. June 15, 2020) (finding no extraordinary and compelling reason for sentence reduction for defendant who was incarcerated at

---

[5] Mr. Linville's argument concerning his medical conditions consists of two sentences: "Linville was charged and convicted of non[-]violent offenses: conspiracy to commit wire fraud and wire fraud. Linville suffers from a variety of significant medical issues including hypertension, a blood clot in his spleen, issues in his pancreas, hepatitis C, diabetes, and enlarged veins in his stomach." Mr. Linville bears the burden of establishing an extraordinary and compelling reason for release, and this recitation of the medical issues identified in the PSR, *see* dkt. 116 at ¶ 84, is arguably not enough to satisfy that burden. *See United States v. Melgarejo*, No. 12-cr-20050-JES-DGB, 2020 WL 2395982, *4 (C.D. Ill. May 12, 2020) (concluding defendant had not satisfied burden because he did not allege that hypertension was severe or not controlled with medication and United States submitted evidence that defendant regularly refused to take his medication). Additionally, Mr. Linville's argument on the existence of the COVID-19 pandemic and his incarceration is not enough to "independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020); *United States v. Dickson*, No. 1:19-cr-251-17, 2020 WL 1904058, at *3 (N.D. Ohio Apr. 17, 2020) (same); *United States v. Eberhart*, No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons."); *see generally United States v. Clark*¸ No. 1:09cr336-1, 2020 WL 1874140 at *8 (M.D.N.C. Apr. 15, 2020).

[6] The Court notes that Mr. Linville tested negative for COVID-19 in late May 2020. Dkt. 195-3.

FCI Elkton and had tested positive for COVID-19 but had not displayed any symptoms and did not have conditions that put him at a higher risk of a severe or deadly case of COVID-19); *United States v. Swain*, No. 2:15-cr-00019-JMS-CMM-06, dkt. 781 (S.D. Ind. June 3, 2020) (finding no extraordinary and compelling reasons for sentence reduction for inmate who was incarcerated at facility experiencing a major outbreak of COVID-19 and had tested positive for COVID-19 but had not displayed severe symptoms and did not have conditions that put him at a higher risk of a severe case of COVID-19). Taking all of this into consideration, the Court will nevertheless assume, without deciding, that Mr. Linville has shown an "extraordinary and compelling reason" for a sentence reduction.

The assumption that an extraordinary and compelling reason for a sentence reduction exists does not, however, end the analysis because the Court must also consider the sentencing factors in 18 U.S.C. § 3553(a) to the extent they are applicable. *See* 18 U.S.C. § 3582(c)(1)(A). Mr. Linville's failure to address any of the § 3553(a) factors in his motion could support a finding that he has failed to carry his burden to show he is entitled to a sentence reduction under § 3582. *See United States v. Donovan*, 4:10-cr-40054-JES-JAG-2, 2020 WL 27332364, *2 (C.D. Ill. May 26, 2020). Nonetheless, the Court will examine the factors to fully address Mr. Linville's motion.

The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the

defendant's crimes; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). Considering these factors, the Court concludes that Mr. Linville's motion for compassionate release must be denied.

As to Mr. Linville's personal characteristics, *see* 18 U.S.C. § 3553(a)(1), he is 47 years old and suffers from a number of health conditions, including diabetes. Although the BOP is providing treatment for his diabetes, Mr. Linville appears unwilling to comply with medical recommendations regarding treatment. *See* dkt. 195 at 11-12. The Court is aware of the risks to Mr. Linville and his refusal to manage his health condition, and it has considered these in its analysis of the § 3553(a) factors.

The nature and circumstances of Mr. Linville's offenses weigh heavily against his request for a sentence reduction. Mr. Linville was the leader of the conspiracy for which he was convicted, and the scope of the conspiracy was considerable. The PSR notes the offense started in late 2011 and involved over 600 victims who cumulatively lost over $130,000. Dkt. 116 at ¶¶ 11, 35. Additionally, Mr. Linville and his co-conspirators solicited donations from individuals and businesses in Indiana, Georgia, Kentucky, Michigan, and Ohio. *Id.* at 28. The co-conspirators expanded the geographic scope of the conspiracy outside of southern Indiana because they knew they were under investigation by the Clark County (Indiana) Sheriff's Office. *Id.* at ¶ 29.

The considerations of § 3553(a)(2) also weigh heavily in favor of denying Mr. Linville's request for a sentence reduction. During the course of the conspiracy, Mr. Linville exhibited a strong defiance towards law enforcement. As outlined in the PSR, Mr. Linville taunted a detective with the Clark County Sheriff's Office in a voicemail saying he could not be shut down due to his

9

contacts in other locations. *Id.* He also threatened a detective with the Clark County Sheriff's Office, saying he would sue the detective, "destroy the Sheriff's Department," make a "mockery of [the] court," and "own" the detective. *Id.* at ¶ 30. Mr. Linville's behavior and attitude demonstrates a lack of respect for law enforcement and the important role it plays in society. Allowing him to be released after serving less than half of his term of imprisonment would likely bolster his defiant attitude, rather than promote respect for the law or provide just punishment for his offense. For these same reasons, the Court also concludes that granting Mr. Linville's motion for compassionate release likely will not protect the public from further crimes by Mr. Linville.

Considering the Sentencing Guidelines, *see* 18 U.S.C. § 3553(a)(4), Mr. Linville received an above-guideline sentence when he was sentenced just over a year ago, and the same considerations underlying the imposition of that sentence are still present. *See* dkt. 160. This is especially true because Mr. Linville has submitted no evidence of rehabilitation, expressed no remorse for his criminal conduct, or explained his plan for what he will do if he is released.

Finally, the Court considers § 3553(a)(2)(D)—the need for the sentence to provide Mr. Linville with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2)(D). The United States acknowledges that Mr. Linville is enrolled in RDAP and is in good standing in his program. Dkt. 195 at 2. Given Mr. Linville's significant history of substance abuse, *see* dkt. 116 at ¶¶ 101-08, the Court believes participation in, and successful completion of, an RDAP program will be beneficial to Mr. Linville. It will provide him with tools necessary to become a successful member of society upon release from incarceration.

While it is possible that Mr. Linville could be at higher risk of serious illness from the COVID-19 pandemic, the Court concludes that, on balance, the § 3553(a) factors weigh against

Mr. Linville's request for compassionate release. *See, e.g.*, *United States v. Chambliss*, 948 F.3d 691,693–64 (5th Cir. 2020) (affirming denial of motion for compassionate release where district court found extraordinary and compelling reasons for sentence reduction based on defendant's advanced-stage liver cancer but nonetheless denied the motion because the § 3553(a) factors weighed against granting the motion); *United States v. Willis*, 382 F. Supp. 3d 1185, 1188–89 (D.N.M. 2019) (compassionate release not warranted for blind, wheelchair-bound defendant who required round-the-clock medical care and had a life expectancy of 18 months, given severity of his wire fraud). Thus, his motion for compassionate release must be denied.

### III. Conclusion

For the reasons stated above, Mr. Linville's motion for compassionate release, dkt. [190], is **denied**.

**IT IS SO ORDERED.**

Date: 6/30/2020

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel